WILLIAM A. BOGAN, ASSESSOR, *v.* W. D. HOLDER, AUDITOR.

1. ASSESSORS. *Fees of. Laws 1894, chapter 33, p. 28.*

The assessor, under laws 1894, chapter 33, p. 28, fixing his compensation, is entitled to five per centum on the total amount of the assessment made by him, real and personal, but his fees are not to be less than three hundred nor more than one thousand dollars in any year. He is not entitled to five per centum additional on the land roll, made once in every four years, as well as three hundred dollars for the personal roll.

2. MANDAMUS. *Officer's demand for fees. Debtor to State. Overpayment.*

If an officer, through mistake of the auditor, receive too much compensation from the state for services rendered in one period of his official term, and the auditor, discovering the error, withholds a sufficiency of his compensation earned in a subsequent period to correct and balance his account, mandamus will not be awarded him to compel payment of the sum so withheld.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

Bogan, the appellant, was the plaintiff in the court below; Holder, auditor, etc., appellee, was defendant there. The facts are fully stated in the opinion of the court.

*Frank Johnston*, for appellant.

" Each assessment roll, for the purpose of fixing the compensation of the assessor, is a separate and complete assessment, and in the year when the land is assessed the allowance of three hundred dollars should be made on the personal assessment roll when the commission on the state taxes contained in that roll is less than the minimum statutory allowance." The only objection that can be made to this construction lies in the letter of the statute, and in the terms that the five per centum commission is allowed " on the amount of the state tax contained in his assessment." And in order to sustain the construction that the two rolls together constitute one assessment, or " his assessment," everything in the statute, except the quoted words, must be excluded from the consideration. The effect and practical operation of the law must be disregarded, and a strict and literal construction must be given to the two words, " his assessment." It must then be assumed that the personal assessment and the land assessment together constitute one assessment.

Upon any broad and correct interpretation of the law each assessment, the personal roll and the land roll, constitutes a separate and complete assessment within the meaning of this statute and within the general statutory provisions relating to the assessment of the lands and personal property.

Section 2017 of the code of 1892, re-enacted by the statute of February 7, 1894, with the two changes already noted, is the only statute regulating the compensation of the assessors, and it applies alike to the years when there is only the

assessment of personal property and also to the year when the land is assessed.

If these two assessments in every fourth year constitute one assessment upon a literal construction of the statute resting on the fact that the term "his assessment" is used in the singular number, then, on the same theory of construction, it is impossible to intelligently dispose of the term "his assessment roll," which is also used in the singular number. Which assessment roll would be required, upon this construction, to be filed? The requirement is in the singular number. On a literal construction one roll is required to be filed as the condition for the allowance of the commissions.

If, upon a strict grammatical construction, the term "his assessment" is to be made to embrace the two assessments as one single assessment, in order to answer the grammatical construction of the term, why would it not be as sound to construe the term "his assessment roll" to mean each "assessment roll" and then treat the term "his assessment" as applying to each assessment, real and personal respectively, as a separate and distinct thing. The literal construction of the term "his assessment" forces an arbitrary interpretation of the words "his assessment roll" into a term of embracing both assessment rolls.

By far the easier and clearer interpretation is to assume that the two assessments are distinct and independent, and then apply the term "his assessment roll," used by the statute in the singular number to each of the assessment rolls respectively. This construction satisfies every term of the statutory clause under consideration and is in harmony with all the other provisions of the law relating to the subject of assessments.

The construction of the statute, making the two assessments constitute one assessment every fourth year, produces these two anomalous results: (1) The personal assessment, being a separate and complete assessment in itself for the three years, on the fourth year loses its entire identity, and becomes merged in one

assessment composed of the personal and land assessments. (2) The minimum of three hundred dollars fixed by the statute, which is undeniably the compensation for the personal assessment as a complete assessment for each of the three years, is lost in every fourth year, and the compensation for the same services is then changed to the actual five per centum commissions, on the personal assessment, which, in sixty counties in the state, is less than three hundred dollars.

The auditor made the adjustment of commissions in 1896 for the services of that year, as he construed the law, and whether he acted under a correct construction or not, he has no authority at present for opening that adjustment and, in effect, making a counter claim or offset of the alleged overpayment. The powers of the auditor are purely statutory. He is not authorized by any statute to go back to former settlements with tax assessors, and, upon a plea of offset, withhold his warrant for services rendered in a subsequent year for other and distinct services.

If the state has any just claim against the assessors for any supposed overpayment, then the state, acting through the attorney-general, should sue the assessors on such claim. It was alleged in the lower court in answer to this proposition that the writ of mandamus was not a matter of right, but was granted *ex gratia* by the court, and, this being the nature of this remedy, the court could withhold the writ, because of the alleged overpayment in 1896. Mandamus was originally a prerogative writ, but is now regarded in the nature of an ordinary action between the parties, and is a writ of right. *Fisher* v. *Charleston*, 17 W. Va., 595; *Kendall* v. *United States*, 12 Pet. (U. S.), 524; *Conn* v. *Dennison*, 24 How. (U. S.), 66; *Gilman* v. *Bassett*, 33 Conn., 298. The remedy is expressly given to private individuals by statute in this state. Code of 1892, § 2848.

If the auditor acted upon a mistake of law in the settlement in 1896, there could be no recovery against the assessor. It is

the well-settled doctrine that such a mistake, unconnected with a mistake of fact, and where there are no indications of fraud or imposition, will not be corrected by a court of equity. This doctrine is announced in *Nabours* v. *Cocke*, 24 Miss., 44. It is stated as a well-settled doctrine by Chancellor Kent, in *Lyon v. Richmond*, 2 John. (N. Y.), ch. 60. The supreme court of Tennessee said that no case had been found in which the court had granted relief in cases of mistakes of law, unless there was either a mixed question of law or fact, or there were circumstances indicating fraud, misrepresentation, undue influence or deceit. *Ottenheimer* v. *Cook*, 10 Heis. (Tenn.), 309. Upon this doctrine of law, announced by all the authorities and sustained by all the adjudged cases, the state has no right to recover this payment, made under the alleged mistake of law.

*Wiley N. Nash*, attorney-general, for appellee.

The whole point involved is whether the real and personalty roll are to be considered as the assessment. What does the law mean when it says the assessor is "to receive from the state treasurer as compensation for his services five per centum on the amount of the state tax contained in his assessment?" How is the amount of the state tax determined? Certainly by both the real and personal roll. What do the words "contained in his assessment" mean, or rather what does "his assessment" mean? Certainly to get at his assessment we must take into consideration both the real and the personal roll—really consider them both as one assessment. When the statute is analyzed there is no room for construction, but we are compelled to adopt the above as the true and only meaning of the statute. Beyond the shadow of a doubt the law counts all assessment rolls for the purpose of fixing the compensation of assessor as one assessment. The use of more than one roll is a matter of convenience. Together they constitute but one assessment.

Argued orally by *Frank Johnston*, for appellant, and by *Wiley N. Nash*, attorney-general, for appellee.

WOODS, C. J., delivered the opinion of the court.

This is an action by mandamus brought by the assessor against the auditor to compel the latter to issue his warrant in favor of the former for $251.11, which is asserted to be a balance due for compensation to the assessor for making the personal assessment of Union county for the year 1897.

The petition for mandamus states that the auditor issued his warrant to the assessor for $48.89 and withheld $251.11, in the year 1897, because of an alleged erroneous payment for the year 1896 in excess of the amount allowed by the statute. The facts as shown by the petition are these: the auditor allowed and paid the assessor for the year 1896 the minimum of $300, fixed by law for making an assessment, for making the personal assessment only for that year, and in addition allowed and paid the assessor five per centum on the amount of the assessment of the realty of the county, to wit: $283.59, thus allowing and paying him a total of $583.59. In that settlement allowance was made as if for two distinct and independent assessments. But in settling for the assessment for 1897, the auditor held that there was a misconception of the construction of the statute fixing the compensation of the assessor, and that in 1896 he should have allowed the assessor, not $300 on the personal assessment and five per cent on the amount of the land roll, thus treating the personal and land rolls as two independent assessments, but only five per cent on the amount of both assessment rolls, regarding them as one assessment, and that the amount of the overpayment thus made in 1896 should be deducted from the amount due in 1897.

Two questions are involved: Does the statute fixing the compensation of assessors provide payment of not less than three hundred dollars in any one year to the assessor for making the personal assessment roll, and, in addition thereto, five per

centum on the amount of the land assessment rolls, thus treating them as two separate and independent assessments; or does the statute provide compensation for one assessment, which is never to be less than three hundred dollars for one year, but which may be more if five per centum on the amount of both rolls will produce more than three hundred dollars; and, if the latter be the proper construction of the statute, may the auditor rightfully withhold a sum erroneously overpaid for the year 1896, in making a settlement with the assesssor for the year 1897, the auditor and the assessor being the same persons both years, and the remedy adopted by the assessor to coerce payment for the year 1897 being mandamus?

The statute, ch. 33, acts of 1894, is in these words:

"SECTION 1. *Be it enacted by the legislature of the State of Mississippi*, That § 2017 of the annotated code of 1892 be amended so as to read as follows: Each assessor shall be entitled to receive from the state treasurer as a compensation for his services five per centum on the amount of the state tax contained in his assessment, payable when a duly certified copy of his assessment roll, properly made, shall be deposited in the office of the auditor, and approved by him, but such compensation shall not be less than three hundred dollars nor more than one thousand dollars in any year; and the board of supervisors of any county may, in addition, allow the assessor not exceeding ten cents for each individual assessed on the personal roll, although only assessed for a poll tax, payable out of the county treasury; *Provided*, That no commission or other allowance shall be paid by the state for assessing poll taxes; and for enumeration of the educatable children of the county he shall be allowed two cents for each child enumerated, payable out of the school fund of the county."

This act of 1894 is identical in its terms with the code provision (§ 2017), except that the minimum compensation is increased from two hundred and fifty to three hundred dollars, and except the new declaration, found in the proviso, "that no

commission or other allowance shall be paid by the state for assessing poll taxes.''

The statute appears to us to be extremely simple and easily understood and not difficult of construction. By it the compensation is fixed at five per centum on the amount of the state tax contained in the assessment; but as this compensation, in some cases, might be inadequate for services performed by the assessor in making his assessment, and in other cases might be too great for the services performed, the legislature adopted a sliding scale by which in no case the compensation should be less than three hundred dollars, or more than one thousand dollars. If there were no other statutory provisions on the subject, and if lands and personalty were alike assessed each year, it hardly seems possible that any two reasonable minds could disagree touching the proper construction of the act of 1894. It so happens, however, that under our system of raising revenues lands are only assessed every four years, and because of this fact, and because of the further fact that for the three years when personalty is alone assessed for taxation, the assessor is entitled to three hundred dollars per annum, the contention of the petitioner is founded, viz.: that the assessor is entitled to three hundred dollars for making his personal assessment roll each year, including the fourth year, when lands are assessed, and in the fourth year is in addition entitled to five per centum on his land assessment roll for that year. It is thought by counsel for the assessor that it could not have been the intention of the legislature to allow for a personal assessment roll three hundred dollars for the three years in which only personal property is required to be assessed, and to deny the assessor the same sum in the fourth year, when lands, in addition to personalty, are required to be assessed. The answer is obvious. No matter how small the service rendered in any one year by the assessor, applying the sliding scale, his compensation for making the assessment shall not be less than three hundred dollars, even though the five per centum on the

amount of the assessment might be much less than three hundred dollars; but when the fourth year arrives and the assessment must include lands as well as personal property, the sliding scale is again applied, with the result that the assessor shall not receive less than three hundred dollars, but, putting the total amount of the land and personal assessment together, he may receive not more than one thousand dollars. In truth, as we suppose, every assessor receives largely more than three hundred dollars for his services in the making of his assessment for the fourth year in which lands and personal property are included. The averments found in the petition illustrate this, for this assessor received nearly four hundred dollars as his commissions for making the assessment of land and personalty in the fourth year. If he had assessed in a larger and richer county he might have received any sum not exceeding one thousand dollars, if his commission at five per centum on the total amount of the assessment would produce that sum.

The law contemplates an assessment—one assessment—evidenced by one roll for three years, and by two rolls for the fourth year when lands as well as personalty are to be assessed, and for making the assessment in every year, the law fixes the compensation at five per cent on the amount of the assessment, but in no case to be less than three hundred or more than one thousand dollars, whereby, according to the legislative mind, each assessor would be fairly compensated for the actual service rendered. We must adhere to the plain intent of the legislature as manifestly disclosed on the face of the statute. The words of the statute must be given their plain and ordinary meaning, and there is no occasion for resort to rules of construction as applied in obscure or repugnant provisions of statutes.

We have examined the various sections of our code referred to by counsel for the assessor, and we are of opinion that they are all in perfect harmony with the statute under consideration, as we have interpreted. It follows that the assessor was

entitled to receive commissions at five per cent on the total amount of his assessment, evidenced by the land roll and the assessment roll, to wit: $389.19, and not three hundred dollars for making the assessment roll, and, in addition, five per cent on the amount shown by the land roll.

We next consider the second question. Was the auditor authorized to withhold in his next settlement with the assessor the amount erroneously overpaid in the settlement for the preceding year? Or, to state it more accurately, should the petitioner be allowed in this mandamus proceeding to recover from the state the amount withheld by the auditor on account of the former overpayment, when he has already received from the state the full amount to which the law entitles him? May he compel the state to pay him for the year 1897 the full sum of three hundred dollars, when he is debtor to the state for the sum demanded, by reason of the overpayment for the year 1896?

We have examined the authorities cited in the brief of the assessor's counsel touching the effect of conduct based upon a mistake of law. We do not question the proposition maintained in those cases, and generally, that contracts based upon mistakes of law will not be relieved against. But the assessor had no contract with the auditor, as he had none with the state. He was entitled to a fixed compensation. He was an officer of the state, and in settling with another officer of the state he was allowed to receive from the state that to which he was not entitled. If the assessor had brought any ordinary action against the state to recover the money withheld by the auditor, would it be contended that the state might not defeat a recovery by setting up and proving the amount of his overpayment as a setoff? It is said, let the state bring suit against the assessor if he has its money. True, the state might do that, but why grant a mandamus to compel the state to pay when it clearly appears that the assessor is indebted to the state in exactly the sum sought to be recovered in this man-

damus proceeding ?   The writ of mandamus is not strictly one
of right.   Our code has assimilated the action of mandamus to
other ordinary actions, but the courts may still grant or deny
the writ according to the circumstances of the case.   It was
said by this court, in *Effingham* v. *Hamilton*, 68 Miss., 523, that
"it is not in every case of clear legal right, and the absence of
a sufficient legal remedy, and when, therefore, mandamus is
an appropriate remedy it will be issued.   It is settled by nu-
merous decisions that a sound judicial discretion is to be used,
and when circumstances make it unwise or inexpedient to allow
this writ, to refuse it when sought to enforce merely private
right."

It is to be rememberad that the decision just referred to was
made while the code of 1880 was operative; but the legislature
has brought forward, in the code of 1892, the same provisions
as to mandamus contained in the code of 1880, and with the
construction placed upon them by this court in that case in
mind.

*Affirmed.*